This number 20-3002. In Re Essar Steel Minnesota LLC et al. Masabi Metallics Co LLC v B Riley FBR Inc. This is Berman and Pastore. Mr. Berman. Good morning. May it please the court. My name is Josh Berman. I'm from the firm of White & Case, and I represent the appellants, Masabi Metallics Corporation, and Chippewa Capital Partners in this appeal. When you're thinking about bankruptcy jurisdiction, is it the what is asked for or the remedy that's given that tells us where we are? Forgive me. Let me make sure I understand your question. In other words, Judge Shannon said he did not think he had jurisdiction. When you first, somebody mentions to you, is there a bankruptcy jurisdiction, how do you go about doing the analysis? Do you think, okay, it's based on what we ask for or based on what is actually given? Okay. Thank you, Judge Amber. I think I understand your question. And I think the most precise answer to that question is that the court ought to look to the causes of action set forth in the complaint in the bankruptcy court. So to use your honor's words, in determining jurisdiction, the court should look to what is asked for. But that's not my postulation, if you will. That is exactly the approach the United States Supreme Court took in the Travelers case, which in our view, I should say, is absolutely dispositive. And with the court's permission, I can say a few words about that case. In 1982, Johns Mansville filed its much-celebrated asbestos bankruptcy. If you're in the bankruptcy world, everybody knows Johns Mansville. You might be familiar with it. In 86, your honor, Travelers settled into a massive, entered into a massive settlement agreement for hundreds of millions of dollars, which was incorporated by reference into the confirmation order. Now, 16 years later, 16 years later, Travelers was faced with a wave of new lawsuits. And Travelers did, in that circumstance, precisely- Conservatives who put up the money in 86 didn't want to be sued later on. It's really that simple. And so how did the Supreme Court go about evaluating precisely the question that your honor just asked me? It looked to the allegations in Travelers' complaint, which was filed in the first instance in the bankruptcy court, in which Travelers said these lawsuits violate the discharge injunction and the bankruptcy court's confirmation order. And despite the lapse of all that time, the Supreme Court of the United States looked to what was asked for. Again, in your words. And it found two things. One, this is somewhat remarkable that the question was easy. And two, that it was a plain reality. The word plain is straight out of the decision. That the bankruptcy court retained jurisdiction to enforce its own discharge injunction and its own confirmation order. Courts have jurisdiction to construe their own orders, interpret their own orders. That's axiomatic. But one could argue here that there's been a conflation. That is, there is your claim in the complaint is I want you to interpret the discharge order contained in the plan approved by the confirmation order. And also contained in the confirmation order. Versus what happens in terms of what you really want is I don't want this to be decided by FINRA. I want it to be decided by you on the merits as to whether B. Riley actually has a claim. Isn't that correct? So I don't think it's precisely correct. Why did you, when you made the decision to leave Minnesota, come here to Delaware, what were you seeking? You're seeking a stop to the FINRA action, right? So that was a little bit separate. What were you seeking? Yes. Let me answer the question as simply as possible. Yes. We were seeking to end the FINRA action and to have Judge Shannon make a ruling as to whether, one, Tom Clark, who was the buyer out of the bankruptcy. And who initially signed the engagement letter more than a year before the effective date in February of 2017 on behalf of his company, which was known as ERP Iron Ore. Not even on behalf of the debtor. And B. Riley, on the other hand. There's certainly, as we used to say in bankruptcy, there's certainly a lot of hair on it. There's no doubt about it. But the point is you come in and you say, hey, interpret this discharge order to say that the reorganized debtor, Ann Chippewa, is somehow not as exonerated or released. Sure. And I think the dates here are very important. I'm sorry. Those are the merits. And it didn't seem like there was any way, when I read the transcript of the decision by Judge Shannon, basically saying I don't want to get involved in this. Now, maybe what he should have said is I have jurisdiction to interpret the discharge order contained in the plan and in the confirmation order. But perhaps what he's really saying is I don't want to get involved in this. And he's either going to abstain or on the merits just say, uh-uh. So we have no jurisdiction over whether he abstained. If he did, we just don't know. But he didn't want to deal with this. Isn't that fair to say? I think that's absolutely fair to say. But I would add something, I think, directly to Your Honor's point, which is there is a conceptual framework around the abstention doctrine that is available to bankruptcy judges. He didn't deal with abstention. And he didn't deal with it. So the point is I think what you're really saying to me is that the judge here went from first to third across Fisher's Mound without touching second base. Bingo. That's exactly right, Your Honor. And that's why the question that is presented to the court is extraordinarily precise, which is did the bankruptcy court err when it held that it had no jurisdiction under Section 157, no subject matter jurisdiction under Section 157 of the Bankruptcy Code. And that is a ruling. That ruling on the ---- What are the bounds around travelers? I mean, it can't be that just invoking an order that this is going to implicate a discharge or confirmation order is enough for jurisdiction. Right? So how do we put bounds on that so that it would, again, start something manufacturing jurisdiction and it's not, as your adversary suggests, a per se rule that gets everyone into bankruptcy court? Sure. Well, without trying to posit sort of a multiplicity of circumstances, I would draw Your Honor's attention to the Resorts International case, which is a case in which this court found that the bankruptcy court properly declined to exercise so-called related to jurisdiction under the Bankruptcy Code. And a few words on the facts of that case I think will be very illuminating as to where to draw the line. Why do we get there? I mean, I agree with your argument to be around, you know, once there's this invocation of the court's own order, that we're in the land of core proceedings, that this is arising under jurisdiction, not related to jurisdiction. So the reason I think we don't have to address sort of ---- Wait a minute. Isn't your argument that this is a core proceeding? Absolutely. And the reason it's a core proceeding is not simply, as Judge Krause suggests or hypothetically suggests in the question, that we have invoked the discharge injunction and the confirmation order. It's that the specific right that we are addressing arises squarely out of the Bankruptcy Code itself. In other words, the discharge injunction that is an essential or fundamental feature of every plan of reorganization and every confirmation order is a creature of statute. And that's ---- and it comes straight out of Section 524A of the Bankruptcy Code itself. So the answer to your question is that when we are dealing with a right that inures to the benefit of a reorganized debtor, every reorganized debtor, by virtue of the Bankruptcy Code itself, there is subject matter jurisdiction under Section 157 vested with the Bankruptcy Courts. Well, why isn't that circular? I mean, we're sort of assuming that the discharge injunction would apply in order for there to be this substantive right under the Bankruptcy Code, as opposed to looking at this as a matter of just a question of can a third party bind an entity not yet in existence, a question that would be governed by state law and has us looking to the post-effective date. Sure. So in a sense, you're touching on what Judge Ambrose asked, which is do we look to your request for relief? The answer to that, I'm afraid to say, reduces to some extent to the facts of this case and the artful amendment and re-amendment by B. Riley of its own engagement letter. So when we think about what actually happened here, we have to go back to February 22nd of 2017, when the proposed buyer of the debtor, formerly known as ESML, now known as Misabi Metallics, was still very much in the throes of bankruptcy. And ERP, which was in a strong cash position, went out and found a financial advisor, and they signed an engagement letter. Now, the following is also crucial. The retention of professionals like B. Riley must be approved by the bankruptcy court. If you're representing the debtor or a party in the case, right? Right. But now we move forward in time. But why do you need a 327 or a 330 approval for engagement? This is for a putative buyer, correct, at the beginning? That's exactly right. And so I think my point is this is exactly the claim that I want to make to, well, the case was with Judge Shannon, but as your honors may be aware, it was administratively transferred to Judge Goldblatt when he was appointed to the bench. But that's exactly the argument that I want to make to the bankruptcy judge. Your honor, this was not a professional that was retained by the debtor. But the point is, once you get to those merits, if you will, the fighting over the $17 million that's being asked for, if the court doesn't abstain and if the court gets there, do you really think you're going to prevail? I do. What makes you think that? I think the artful amendment and re-amendment of the engagement letter resulted in an engagement letter that happens to be dated, and I'll leave it at that, one day before the effective date of the plan. Yes, dated December 21st. Right. And the effective date of the plan was December 22nd. So on the face of the plan and the confirmation order itself, and under Section 520. And you're saying also Misabi's not a part of that, right? Absolutely I'm saying that. The RBI and Chippewa, signed by Clark on behalf of them, and the reorganized debtor doesn't even exist until the next day. I got it. I got it. But I would make you a bet, even if this goes back, the court is going to take 15 steps back and punt one way or the other. It's either going to abstain or it's going to say on the merits, I'm not going to deal with it. Look, that may be. I'm not going to give you the $17 million. That may be. But if I may respectfully push back at the idea. Or, I should say, if the $17 million, excuse me, the $17 million, I'm going to let FINRA decide that. So it may well be that upon remand, Judge Goldblatt would go through the well-settled abstention analysis. Now, we argue that this is a court proceeding, and the abstention analysis is not even available to Judge Goldblatt. Under the rubric of the Resorts International case, which deals with related to rather than arising. That's an argument made to Judge Goldblatt. Whatever decision he makes on abstention, I don't think we have a pellet. That's right. But we do have a statutory right for Judge Goldblatt to go through that analysis. But more than that, Your Honor, the rule articulated by Judge Shannon, if allowed to stand, would mean that debtors and reorganized debtors. That you can take a court proceeding, deem it to be non-core, get into related to territory, and mess up the law. You've done it better than I have. Okay. I got it. So why should we, a couple questions. Why should we treat this all as one matter? Isn't it possible that there's this threshold court issue of what the agreement means? But does it follow, then, that everything else you want that follows after that is also part of the core proceeding? I mean, I'm wondering whether there might just be core proceeding jurisdiction over the interpretation, the order under Travelers, that it might not necessarily follow that everything else you want can be shoehorned into that. That's an interesting question, Your Honor. Thank you for asking it. Let me try to address it this way. The first step in the analysis is not what does the engagement letter mean. The first step in the analysis is, is a debt claimed on account of any act, omission, matter, and so forth, that occurred prior to the effective date. And there is no question, it's just a matter of time and date, that the engagement letter on which B. Riley purports to rely, even though it was initially dated in February of 2017, the amended version is dated prior to the effective date. That's the threshold matter. Now, if the bankruptcy court says, look, that's a technicality, but if B. Riley had filed two days later, we wouldn't be here, that's a ruling that is well within the bankruptcy court's ambit to make. Right? You all know which side I would advocate, but there's no question that's within the core function of the bankruptcy judge. At that point, if the bankruptcy judge says, look, I'm not going to let you skate on the technicality. Let's see whether B. Riley really is owed this money. Then we look to the engagement letter. Then we look to the facts of the capital raise. Then we understand whether the raise ever actually closed. Then we understand whether the raise that actually- The point is that everything that was dealt with in the plan and confirmation order was what arose before the effective date. Isn't that right? That's exactly right. And the interesting thing, I look at your complaint on page 9. You quote 14.7 of the plan. And I go, and there's something left out, and there's no ellipses. What's left out is, including but not limited to, the demands and liabilities that arose before the effective date. Got to be careful when you go back, if you go back. Leave that in. That's the nub of their argument, and you can't take that out of 14.7 of the plan. It's already in there. That's fair enough. I apologize for not having the complaint in front of me, Your Honor. I've got the appellate briefs. It's on page 9 of the complaint. It didn't make sense to me, and as I'm reading it, and there's including but not specified in 502G, and I'm thinking, wait a minute, there's something before that. It turns out it's including but not limited to demands and liabilities that rose before the effective date. Now, I'm not saying it may have just been somebody putting it together, messing up, but like relationships, little things mean a lot. No, no, I appreciate that. I don't have an answer to tend to the court one way or the other. It sounds like it was a clerical mistake, but I appreciate it. Did you reserve time for rebuttal? I'd like to, please. I see that I've gone over time in responding to Your Honor's questions. I'd just ask you to talk a little bit. You really have kind of glossed over the difference between pre-confirmation and post-confirmation jurisdiction. And, you know, jurisdiction, it's axiomatic. Jurisdiction narrows after confirmation here. You know, you rely on this list of core items that are in the statute, but all of those core items are pre-confirmation items. How does your rule not amount to just creating broad post-confirmation jurisdiction going forward here? I mean, I do think there's this what's the limiting principle issue, which Judge Krause asked about, and I'm not sure I heard a clear answer. Can I just add it to you? Because usually effective date and confirmation often are the same day. Here it was months apart. That's right. So it would be pre-effective date, I think, and post-effective date. That's right. That was the quirk of this bankruptcy. No, I understand the question exactly. And I think the limiting principle comes out of the Bankruptcy Code. I think where a plaintiff files an adversary proceeding, as my clients did, alleging a statutory right that arises out of Section 524A of the Bankruptcy Code, the Bankruptcy Code has core jurisdiction. Now, bankruptcy judges certainly are capable of saying, counsel, this was a cosmetic claim. I'm reading your complaint, and I see that you've alleged a violation of the discharge injunction, but it seems to me that you slipped that into your complaint for purposes of manufacturing jurisdiction, if you will, in the Bankruptcy Court to stay, let's say, an arbitral proceeding or a FINRA proceeding. And on that basis, I don't deem you to have alleged in good faith a cognizable arising under jurisdiction under Section 157 of the Bankruptcy Code. But first of all, that's not what happened here. We have a genuine good faith belief and argument that these debts, these claim debts, I should say, or this claim debt was discharged, was subject to the court's discharge injunction and confirmation order. So it's not like we kind of combed through the Bankruptcy Code, if you will, leafed through the books. But they also have a good argument that it's everything up to the effect of they are not after. And, in effect, the success fee claim really arose in June of the following year, and the reorganized debtor didn't exist until after the effective date. Well, Your Honor, I respectfully – I don't agree that that's a good claim, and I'll tell you why, if I may. There is no claim without a contract. It doesn't make any difference for today's purposes. We're probably not going to do that. Fair enough. Fair enough. If I may just make the point, there is no – We'll give you time on rebuttal. Okay. We'll give you three minutes on rebuttal. Thank you very much. Thank you. Mr. Pastore. Good morning. May it please the Court, my name is Joseph Pastore. I represent B Riley FDR, the appellee in this proceeding. I apologize for mispronouncing it. I was thinking of the famous John Pastore from Rhode Island. You know, it's probably Americanized years ago, but we say Pastore, and that's what we've said for a while. As my wife says, you don't say story, you say store. First, I'm going to ask you the same question. When we think about the jurisdiction of the Bankruptcy Court, are we focused on what the questions are or what the answers will be? I think what we're focused on is what relief is really – What relief they're asking for or what relief they're going to get. What relief they're going to get. Because you can ask – How do you know that at the beginning if you're a Bankruptcy Court? You don't. You read the complaint. And the complaint says what? The complaint says – The complaint says – It says civil contempt, declaratory judgment, and breach of contract, because it claims that you have a discharge order or a discharge provision in two places. You have it in a confirmation order and you have it in a plan. And we're asking you to interpret that. And when you go to travelers, it looks like there's a per se rule from the Supreme Court that any time a Bankruptcy Court is asked to interpret its own orders, that is – it has jurisdiction. I understand the question. I think that is the hub of this whole argument. It's why I thought it might be quick from maybe not. Your Honor, respectfully, I think Judge Shannon did touch second base. I think he went first to third and got the base. I think he knew exactly what he was doing. I think it was very nuanced and very smart. I'll explain why. That sounds like a core proceeding, not a non-core proceeding in which you would get into related jurisdiction in which you would get into whether there's a close nexus. I don't necessarily think you have to get there, do you? I agree with you. And if you read Wieland, I think it makes clear that a core proceeding is not subject to related jurisdiction. Very good decision. A couple years ago, out of the Delaware Bankruptcy Court, I still think Judge Shannon got it right. Let me explain why, if I could, briefly. I don't think you can say. You may have got it right, but I don't want to deal with this. Yeah, well, I get that. I get that. I think that's absolutely right, and I think he should abstain or the new judge should abstain if it goes back. But I think the reason intellectually the judge was right and did this right, it's very nuanced, but it's very important. It's very important as guardians of bankruptcy jurisdiction and the limitations associated there with it. You can't allege violation of a discharge order and then simply create jurisdiction if there's no basis for that allegation. What you can say. And I can tell you why there's no basis. Would it be better if you had to just do all over again? Might it be more efficient for you to say, let's assume there is jurisdiction, but this is before FINRA, and why don't you just abstain, Judge? Or if you want to get to the merits, everything that they claim gets through a release was up to the effective date and not beyond. My guess is you would have gotten one of those two things. I think we did ask for that. You asked him to abstain? We definitely asked for him to dismiss the complaint, but we didn't ask for him to dismiss it on jurisdictional grounds. I think this panel needs to think for a second. Judge Shannon knew what he was doing, and he did so because this is manufactured jurisdiction. This clearly is one of the best judges in America. There's no doubt about that. The point here is that maybe we in resorts and other cases weren't as clear as we thought we might be with respect to bankruptcy jurisdiction and what is core and what is non-core. No, I don't think that's it. I think you're very clear. Resorts is very clear, very well done. I think what's going on is you can't, and I'm going to try to find an analogy that's appropriate, you can't put a non-football player in a Philadelphia Eagles uniform, send him on the field, and say he's a football player. You can't write a complaint.  Come on. You can't write a complaint that says this is a complaint about patents and then say in the complaint there's no patents involved and create patent jurisdiction. In this complaint, the injunction, the discharge injunction, is about claims against the debtor, the debtor. There are no claims in a federal complaint about the debtor. But doesn't this go back to how we characterize Misabi's relationship to the Second Amendment? And that's exactly right. And at the time that Mr. Clark signed for it, it was still a debtor. The estate was still in existence, and he was purporting to bind it at the time for something to come into effect the next day. Why isn't the question of whether it could be bound under those circumstances pre-effective date, why doesn't that fall under the court's core jurisdiction? Because the complaint admits that B. Riley has brought no claims against the debtor, and the discharge injunction only applies to the debtor. It's claims against the debtor. And B. Riley has brought no claims against the debtor. So if it turns out the debtor was attempted to be bound, we don't win our Finner arbitration. We brought claims against the reorganized debtor. The discharge injunction doesn't apply to claims against the reorganized debtor once the reorganized debtor is set free. And that's the critical distinction here, and that's what Judge Shannon Suisponte, not at our suggestion, got right. And when it doesn't invoke core jurisdiction, because the discharge injunction is not really at play here, it's not really involved, because the claims have to be against the debtor. There are no claims against the debtor. Finner claims aren't against the debtor. TRO wasn't against the debtor. Nothing against the debtor. It's all the new reorganized debtor. That's a pretty good argument. So did you make that argument before Judge Shannon? Judge Shannon figured this out on his own. He did the Suisponte judge, and he's right. The hearing was held the day before. What was covered at that hearing? I was there. It was an oral argument that went for about, I think, about two hours. It was a snow day. I remember that. And we covered our motion to dismiss the complaint. I'm not even sure we touched on jurisdiction, honestly. I don't think we did. I think Judge Shannon said, this is a manufactured attempt at jurisdiction. I'm not going to countenance it. It doesn't actually invoke core jurisdiction, because it's not actually going to the discharge injunction, because the discharge injunction only applies to claims against the debtor. As a result, it's only related to jurisdiction. If you were back at that point, probably one of the arguments you would make is, this is a manufactured attempt to have jurisdiction. Hall cloth. And it leads to absurdity. It leads to absurdity. But you would be talking about the merits, as opposed to what they're actually asking for in the complaint. So there's a split between the two. Right. Yes. I mean, we were talking about the merits of the oral argument, saying that the claim at FINRA is not covered, or the injunction should be dismissed, because we haven't violated the injunction, because we sued the reorganized debtor. We were not talking about jurisdiction. But the same rule applies. And just think about the absurdity for a second. If I were to sue Young Clerk over there, and Young Clerk were to run to Judge Shannon in bankruptcy court and invoke the discharge injunction, would the court have court jurisdiction over that lawsuit? No. Because that would be manufactured. That would be false. It's a false choice. You have to say court jurisdiction applies when the court is actually asked to invoke the discharge injunction. But here you couldn't have. That's when the obligation arose. And in effect, by having Misabi sign on before the effective date, that's when the obligation was imputed to Misabi. So before the judge was a motion that said that date wasn't actually when it was signed. You know, legal closings, lawyers, the document was signed later. And the judge declined to rule on the motion and said, my analysis doesn't require that analysis. And so he said, no, I'm not going to rule on that issue. Because it's about, for him, was this claim against the debtor? The debtor. And it can't be against the debtor. The person who signed it had no authority to bind the debtor. It's physically impossible for us to have sued the debtor on this contract. Impossible. Therefore, we're not invoking the discharge injunction. We can't be. We can't be. And the absurdity I'm talking about is what you have to guard against as guardians of the limited jurisdiction of bankruptcy courts. It's an absurdity to say that every time someone writes discharge injunction, even if it's wholly inapplicable, the court has court jurisdiction. What the judge said is, no, I don't have court jurisdiction because it's not really about the discharge injunction. I have related to jurisdiction. The judge could say, I have authority to, as a court proceeding, to interpret my discharge order. However, in this particular case, either I abstain or I note that on the merits, the organized debtor really isn't even bound by the Second Amendment. Clearly it wasn't part of the First Amendment. Clearly it wasn't part of the initial engagement agreement. And, therefore, one way or the other, you could say you win, right? That's true. You go back to FINRA. That's true. And that is our goal. It's been a couple of years. But I still stand by. What's the FINRA case matter? It's an arbitration, is that right? It's a securities arbitration over the engagement agreement, the services provided by my client for which they have not paid. And that's been stayed? It's been stayed. But I'd just like to make one important point. In the injunction complaint itself, paragraph 50, Masabi is not a signatory to the Second Amendment agreement. Masabi, the debtor. Paragraph 15, defendant was never retained by the debtor. The injunction is for claims against the debtor. No claims were ever made against the debtor. Therefore, the injunction is not appropriately before the judge. Therefore, he's not exercising court jurisdiction. But it is related to, under resorts, it's related to. That's why I asked the very first question I asked. The question is, when you think about bankruptcy jurisdiction, are you considering what's asked by the party filing the complaint or what ultimately you give? At the beginning, doesn't it logically have to be what you ask for? But not if the complaint collapses on its own language like this one does. Because if not, you're going to have an absurdity. On the merits, it may collapse on its own language of what's in the plan and what's in the Second Amendment to the engagement agreement. I understand. My point is that the court is not. That's the second base. The second base that you have to touch is you may have jurisdiction, but you're still going to end up with third base, which is I ain't going to deal with it. Or you, B. Riley, win because of the reasons that you're giving on the merits. I understand what you're saying, but I think the judge did touch second base because I think his analysis says you cannot falsely manufacture court jurisdiction by simply using the word discharge injunction. If my analysis is the discharge injunction is not involved. But that's not what Judge Shannon said. What he said was this doesn't look to me as if I have bankruptcy jurisdiction because this is a related to matter and it does not appear in this related to matter that there is a close nexus to what went on here. Therefore, I do not have jurisdiction. But then the question becomes, but what if it isn't a non-core matter? What if it's a core matter? If it's a core matter, I would concede there's jurisdiction. But it's not a core matter if you're just falsely. Then how do I get around travelers to say it's not a core matter? Because, again, you can't create patent jurisdiction if you write the word patent. There's no patent involved. What are the words in travelers? Do you have it in front of you? I don't have travelers in front of me, but I've read it carefully. And it's basically that bankruptcy court has bankruptcy jurisdiction over matters that relate to the interpretation of its orders among other things, right? Correct. And that's what they're asking. There's no quibbling about the plain language of my order. The discharge injunction applies to the debtor. Again, from your position, both sides assumed a so what. But you might want to just have said it, so what? There's jurisdiction here. It may be core jurisdiction. They ain't going to win. They're not going to win here because either he's going to abstain or he's going to go to the merits, and it's going to be something that you look at for the release as of the effective date, not what happens after the effective date, especially when the claim comes into existence six months later. That's right. I mean, we think we're on the right here. We think we provided services and didn't get paid, and it's pretty straightforward. Anything further you want to add? No. Again, I would just ask you just to consider that Judge Shannon did think this through, and when he did the related-to analysis, it was because he determined it wasn't core because the discharge injunction was not applicable. Therefore, but it is related-to. It is related-to. He did that analysis. What you're saying is he's looking through it, and he's seeing what it really is. Yeah. He's saying you can't manufacture core jurisdiction. It has to actually exist. All right. Any further questions? Thank you, panel. I appreciate it. We'll give you three minutes, and Mr. Berman. Thank you very much, Your Honor. I'm glad to have the opportunity to address the Court again. What makes you think that this, if you ever were to get to the merits, what makes you think that the reorganized debtor is party to the Second Amendment? So we absolutely have a substantive defense to say, hey, we weren't a party. But we kept hearing from my colleague, Mr. Pastore, that there are no claims against the debtor. There are no claims against the debtor. Of course there are claims against the debtor. There are claims against the reorganized debtor. Right. And please allow me to quote to Your Honors from Judge Shannon's own confirmation order, which read as follows. Which provision? Sorry. 14.6 of the Third Amendment Plan of Reorganization. Okay. Got it. The storage of liabilities. Go ahead. Right. The way the paragraph begins is, except as otherwise provided in the plan. And then I'm going to skip a couple of sentences, mindfully but cautiously. Yeah, I was going to say, let's not skip stuff again. Right. Holders of claims shall be precluded from asserting against the reorganized debtor, the debtors, their assets, or any property dealt with under the plan any further claim, based on any act or mission. Prior to the effective date. Right. So without a contract, without an alleged contract, which we would allege that we would, on the substance, on the merits, say, look, it's non-binding as to us. But without a contract, B. Riley has no claim against Masabi Metallics. And so to say to this court that we sued a stranger for violating a patent, even though we really just got into an automobile collision and tried to get before the Court of Federal Claims, is really an inapposite analogy. This was a multi-year, multi-billion dollar bankruptcy relating to an ongoing iron ore project. There are still several major, again, multi-billion dollar adversary proceedings now before Judge Goldblatt, who took the baton from Judge Shannon. And the claim for civil contempt of the discharge order, declaratory judgment, and violation of the plan is very far from manufactured. Those are bona fide, genuine claims that vested Judge Shannon with court jurisdiction under Travelers. There is no way to get around Travelers. Now, they may win, ultimately, before Judge Goldblatt. You know what my bet is. I think you made that clear. But I don't want to wade into the merits. We do believe we have good substantive responses. But that is, I think, irrelevant to the narrow jurisdictional issue before the court. All right. Thank you very much. Thank you to both counselors for being with us. Thank you very much.